# Exhibit A

Jeffrey D. Kaliel
Sophia Goren Gold
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielgold.com

Scott Edelsberg (SBN 330090)
**EDELSBERG LAW, P.A.**
scott@edelsberglaw.com
1925 Century Park East, Suite 1700
Los Angeles, California 90067
Tel: (305) 975-3320

*Attorneys for Plaintiff and Proposed Class*

```
FILED
Superior Court of California
County of Los Angeles
04/15/2025
David W. Slayton, Executive Officer/Clerk of Court
By: _____R. Lozano_____ Deputy
```

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| **FIRST J PRODUCTIONS, INC.**, itself and on behalf of all others similarly situated,<br><br>                 Plaintiff,<br>vs.<br><br>**IRON MOUNTAIN, INC. and IRON MOUNTAIN SECURE SHREDDING, INC.**,<br><br>                 Defendants. | Case No.   25STCV05424<br><br>**AMENDED CLASS ACTION COMPLAINT**<br>**1. Violation of the California Unfair Competition Law**<br>**2. Violation of the California False Advertising Law**<br>**3. Breach of Contract**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff FIRST J PRODUCTIONS, INC on behalf of itself and all others similarly situated, complain and allege upon information and belief based, among other things, upon the investigation made by Plaintiff and through their attorneys as follows:

### NATURE OF THE ACTION

1.     This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendants IRON MOUNTAIN, INC. and IRON

1  MOUNTAIN SECURE SHREDDING, INC., ("Iron Mountain" or "Defendants"), arising from its deceptive assessment of undisclosed junk fees assessed on top of document storage services. Iron Mountain adds the junk fees without consent and customers are often entirely unaware of the add-on fees until they have already been billed for and paid them.

2. Via its junk fee schemes, which are described in more detail herein, Iron Mountain obscures the true cost of signing up for and maintaining document storage services with the company to the detriment of consumers. Specifically, Defendants use its junk fee schemes to hide the true costs of a given service by dividing the same service into multiple parts with different names, each with different and redundant charges. This is designed to make it impossible for document storage customers to compare costs or to discover the true cost of Iron Mountain's document storage services until a customer has already been billed for and paid for them.

3. Iron Mountain's sales model is, in effect, to disguise the true costs of its document storage services, so that only Iron Mountain knows these true costs at the time of sign-up—not its customers.

4. Beyond dividing the same service into different names, Iron Mountain compounds the deception by adopting obscure and misleading fee names, hiding the definition of the fee names in a confusing and dense "glossary" and other documents that it never affirmatively provides to customers during the sign-up process.

5. As an example, Iron Mountain obscures document storage costs by adding multiple fees when customers seek to pull documents out of Iron Mountain's storage facilities or destroy such documents.

6. As an example, once Iron Mountain has taken possession of a customer's documents for storage, its contract provides it the ability to charge a "shred" fee when the customers want to destroy the documents. But whenever a customer makes a destruction request, Iron Mountain adds on a mysterious "administrative fee" in addition to the cost that the customer is paying for the shredding service. The fee is bogus and mis-named, since customers are already paying a fee for shredding documents—"administration" of such shredding is redundant and

2
AMENDED CLASS ACTION COMPLAINT

reasonably included in the already-high shredding fee. "Administration" is a necessary component of shredding, and there is no reasonable justification for charging two fees for shredding of documents.

7. As another example, Iron Mountain also charges a so-called "fuel surcharge" whenever it transports a customer's documents to or from one of its facilities. The name of the fee and contract provisions discussing the fee reasonably indicate the commonsense proposition that this "fuel surcharge" is a pass-through cost to compensate for rising fuel costs. But in fact the fee bears no reasonable relationship to Iron Mountain's actual cost of fuel.

8. That is because Iron Mountain assesses this so-called surcharge as a percentage of other services provided, not only on the actual use of fuel. Indeed, Iron Mountain uses a complicated formula to assesses a "fuel surcharge" as a percentage of services provided, not to transportation provided. This necessarily means users are being charged a fuel surcharge on activities that require no "fuel" whatsoever.

9. To illustrate, Plaintiff requested shred services for three consecutive months in 2023, each time for the same quantity of documents. But on the last month, and using the complicated and undisclosed formula referenced above, Iron Mountain assessed Plaintiff a "fuel surcharge" that was more than double the prior months' surcharges—even though the price of fuel certainly did not double during that period.

10. These deceptive practices allow Iron Mountain to hide the true prices of its document storage services. Customers are misled by the document storage contracts they enter with Iron Mountain, with no idea and no way to know in advance that these additional junk fees will be assessed.

11. Iron Mountain's conduct is deceptive, as it obstructs customers' ability to engage in fair and accurate price comparisons in the marketplace and to shop around for the best value for their money.

12. Thousands of Iron Mountain customers like Plaintiff have been assessed administrative fees and fuel surcharges that they did not bargain for.

3
AMENDED CLASS ACTION COMPLAINT

13. Plaintiff seek damages and, among other remedies, injunctive relief that fairly allows customers to decide whether they will pay Iron Mountain's add-on junk fees.

## PARTIES

14. Plaintiff First J Productions, Inc. is incorporated in the State of California, and based in Woodland Hills, CA.

15. Defendants are Iron Mountain, Inc., Iron Mountain Secure Shredding, Inc., and any and all of their predecessors in interest, successors in interest or assigns. Defendants are in the business of selling information management services, including document storage, shredding/destruction of records, and offsite data protection.

16. Defendant Iron Mountain, Inc. maintains a principal place of business in Boston, Massachusetts.

17. Iron Mountain, Inc. is a holding company, with substantially all of its assets being the stock of its subsidiaries and substantially all of its operations conducted by its directly- and wholly-owned subsidiaries. Iron Mountain Inc.'s ability to make payments on its various debt obligations is dependent upon the receipt of sufficient funds from its subsidiaries.

18. Defendant Iron Mountain Secure Shredding, Inc. is a Delaware corporation with a principal place of business in Boston, Massachusetts and is a wholly-owned subsidiary of defendant Iron Mountain, Inc.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over this action pursuant to Cal. Code Civ. Proc. § 410.10 and Cal. Bus. & Prof. Code §§ 17203-17204, 17604. This action is brought as a class action on behalf of Plaintiff and Class members pursuant to Cal. Code Civ. Proc. § 382.

20. This Court has personal jurisdiction over Defendants because Defendants regularly conduct business in California. Defendants are registered with the California Secretary of State to do business with sufficient minimum contacts in California, and/or otherwise intentionally avail themselves of the California market, including in the County of Los Angeles, which has

caused both obligations and liability of Defendants to arise in the County of Los Angeles.

21. Venue is proper in this Court pursuant to Cal. Code Civ. Proc. §§ 395 and 395.5 because Defendants regularly conduct business in this county, and unlawful acts or omissions have occurred in this county.

## COMMON FACTUAL ALLEGATIONS

**A.   Iron Mountain Document Storage Services**

22. Iron Mountain is a multibillion dollar company and a leading storage and information management services provider to more than 225,000 organizations around the globe. Iron mountain offers a range of services including digital transformation, data centers, secure records, storage, information management, asset lifecycle management, secure destruction, and art storage and logistics.

23. Iron Mountain earns the bulk of its revenue from document storage and related services. It provides not only the physical facilities in which documents are stored, but also services relating to document transportation, destruction, and inventory management, among others.

24. The basic element of Iron Mountain's document storage of hard copy documents is a monthly recurring charge for storage of one box or carton of documents, or one cubic foot of documents. Storage charges accrue every month.

25. However, Iron Mountain also earns money on customers who cease using its services or who want to reduce the number of document stored with Iron Mountain, by embedding high switching or document destruction costs into its customer contracts. Specifically, once a customer stores a box of documents with Iron Mountain, if the customer wants to move those documents to another document storage vendor or destroy those documents to avoid paying monthly charges, it first must pay Iron Mountain fees.

26. These charges alone can be substantial as to effectively hold the customer "hostage" to Iron Mountain and thus are sometimes referred to as "hostage fees."

27. It doesn't end there: once Iron Mountain signs up customers to its services, it then

adds deceptive charges on its captive customers—charges which are undisclosed or inadequately disclosed at the time a customer signs up. As discussed below, these charges include so-called "administrative" fees that are not related to the value of the services provided, along with deceptive and mis-named "fuel surcharges" assessed on services that do not consume fuel in meaningful quantities.

B. **Iron Mountain Omits and Conceals Material Facts About the Total Cost of Storage Services by Deceptively Tacking Junk Fees onto Monthly Invoices**

28. Iron Mountain hides and obfuscates the true cost of storing, shredding or transporting documents during the sign-up process.

29. The sign-up process for Iron Mountain services is intentionally confusing. Iron Mountain provides new customers with several different disclosures, each referring to definitions and policies posted on Iron Mountain's website but not affirmatively provided to customers—a process that makes it impossible for reasonable customers to determine the high fees that will be assessed once Iron Mountain has possession of the customer's documents.

30. Defendants' refusal to provide a single, integrated pricing document is designed to disguise the true cost of storage service, of which retrieval and shredding services are an essential component.

31. The process works to obscure the future liability that Iron Mountain customers are undertaking by agreeing to store documents with the company.

32. This practice allows Iron Mountain to obscure the true costs of their services: advertising normal prices to customers to induce the sale, and then exponentially raising customers' true cost with later-added fees, after the consumer has no ability to cancel their transactions.

33. These incomplete and deceptive disclosures provided to customers fail to provide an adequate advance warning to customers that additional, unavoidable and redundant fees will be imposed on their document storge, including for shredding and fuel.

34. Because no customer seeks to have Defendant hold its documents permanently—

6
AMENDED CLASS ACTION COMPLAINT

at some point, documents will need to be removed or destroyed—charges for removal or destruction are an essential component of document storage. But Defendant works to hide these ultimate costs until the customer has committed and the customer has no recourse but to pay.

**C. Administrative Fees are Redundant and Undisclosed Junk Fees**

35. Defendant dubs one of these inadequately disclosed and deceptive fees a "shred administrative fee," which it assesses on customers who request to have documents destroyed.

36. Once Iron Mountain has taken possession of a customer's documents for storage, its contract provides it the ability to charge a "shred" fee when the customers want to destroy the documents. But whenever a customer makes a destruction request, Iron Mountain adds on this mysterious "shred administrative fee" in addition to the cost that the customer is paying for the shredding service. The fee is bogus and mis-named, since customers are already paying a fee for shredding documents—"administration" of such shredding is redundant and reasonably included in the already-high shredding fee. "Administration" is a necessary component of shredding, and there is no reasonable justification for charging two fees for shredding of documents.

37. Iron Mountain is therefore charging customers twice for the same services.

38. The "shred administrative fee" is unfair and deceptive because it is not reasonably disclosed at the time a customer signs up for Iron Mountain services, and because the charge is not reasonably related to the service supposedly provided. Indeed, for items that are being shredded, there is no additional "administration" provided that is not already covered by the cost the customer is already paying for shredding.

**D. Fuel Surcharges Are Applied Unfairly and Deceptively --**

39. Iron Mountain also assesses so-called "fuel surcharges," purportedly to account for rising fuel costs to transport documents.

40. Iron Mountain's website contains a "Glossary" that is not affirmatively provided to customers. The Glossary describes a "Fuel surcharge" as "an additional charge imposed on Transportation Visits to adjust for changes in fuel prices. For additional detail, click here."

41. Not only is there no information on when or if the Fuel Surcharge will be assessed

7
AMENDED CLASS ACTION COMPLAINT

on a given customer's documents in the Fee Schedule, but there is also no such information in the webpage glossary.

42. Instead, if a customer were to "click here," a different web page states for the first time Iron Mountain's "fuel surcharge" assessment:

> Fuel surcharge
>
> How it works
> Iron Mountain applies a fuel surcharge that is adjusted monthly. Adjustments to the fuel surcharge basis will be effective the first of each month and posted approximately two weeks prior to the effective date.
>
> The fuel surcharge is indexed to the National U.S. Average On-Highway Diesel Fuel Prices reported by the U.S. Department of Energy for the month prior to the adjustment. For example, the surcharge for December 2020 is based on the November 2020 National U.S. Average On-Highway Diesel Fuel Price.
>
> You can access the On-Highway Diesel Fuel Prices to reference the U.S. Department of Energy's National U.S. Average On-Highway Diesel Fuel Prices for the reported diesel fuel pricing information. (NOTE: If you click on the link, you will leave Iron Mountain's website. Iron Mountain is not responsible for the content or information provided on other web sites.)
>
> Fuel surcharge percentages and thresholds are subject to change without prior notice. If the fuel surcharge price basis rises above $10.056 per gallon, or there are changes to the percentages and thresholds, the table will be updated.
>
> Billing: The fuel surcharge will be included on your invoice as a separate line item. **The fuel surcharge will be applied against transportation-related charges to include Trip Charges and Shredding Services**.

(emphasis added).

43. The disclosure reasonably indicates that fuel surcharges will be assessed when fuel is consumed. In practice, however, and as occurred to Plaintiff, Iron Mountain assesses this "fuel surcharge" not just on transportation-related charges, but also on charges related to shredding that have nothing to do with transportation of documents.

44. The name of the fee and contract provisions discussing the fee reasonably indicate the commonsense proposition that this "fuel surcharge" is a pass-through cost to compensate for

8
AMENDED CLASS ACTION COMPLAINT

rising fuel costs. But in fact the fee bears no reasonable relationship to Iron Mountain's actual cost of fuel.

45. That is because Iron Mountain assesses this so-called surcharge as a percentage of other services provided, not only on the actual use of fuel. Indeed, Iron Mountain uses a complicated formula to assesses a "fuel surcharge" as a percentage of services provided, not to transportation provided. This necessarily means users are being charged a fuel surcharge on activities that require no "fuel" whatsoever.

46. To illustrate, Plaintiff requested shred services for three consecutive months in 2023, each time for the same quantity of documents. But on the last month, and using the complicated and undisclosed formula referenced above, Iron Mountain assessed Plaintiff a "fuel surcharge" that was more than double the prior months' surcharges—even though the price of fuel certainly did not double during that period. In fact, over the three month period, the National U.S. Average On-Highway Diesel Fuel Prices, as reported by the U.S. Department of Energy, steadily decreased over this period of time.

47. Charging fuel surcharges on already-redundant and deceptive "handling fees" is barred by common sense, fairness, and by the Iron Mountain's own website representations.

**E.  Plaintiff' Experiences**

48. Plaintiff requested shredding services for stored documents, in an amount of 65 gallons, in each month of February, March and April, 2023. It was charged $11.95 "shred administration fees" each month, in addition to shred fees in excess of $100 each of those months.

49. In addition, Plaintiff was assessed Fuel Surcharges of $15.56, $15.14, and $33.89 in those months, respectively.

50. Had Plaintiff known that the Shred Administrative Fee would be assessed and the Fuel Surcharge would be calculated in the manner it way, it would not have agreed to store its documents with Iron Mountain.

51. Moreover, if Iron Mountain did not charge these erroneous junk fees, Plaintiff would not have paid as much for its shredding and document management services.

9
AMENDED CLASS ACTION COMPLAINT

## CLASS ALLEGATIONS

52. Pursuant to Cal. Code Civ. Proc. § 382 and Cal. Civ. Code § 1781, Plaintiff brings this action on behalf of itself and Class of similarly situated persons defined as follows:

> All persons or entities in California who, within the applicable statute of limitations preceding the filing of this action, were assessed a Fuel Surcharge or a Shred Administration Fee.

53. Excluded from the Class are Defendants, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case and their staff. Plaintiff reserve the right to expand, limit, modify, or amend this class definition, including, without limitation, the addition of one or more subClass, in connection with their motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

54. **Numerosity**: At this time, Plaintiff does not know the exact size of the Class; however, due to the nature of the trade and commerce involved, Plaintiff believes that the Class members are well into the thousands, and thus are so numerous that joinder of all members is impractical. The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

55. **Commonality**: There are questions of law or fact common to the Class, which include, but are not limited to, the following:

    a. Whether Defendants' alleged misconduct misled or had the tendency to mislead customers;

    b. Whether Defendants engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

    c. Whether Defendants' alleged conduct constitutes violations of the laws asserted and/or a breach of contract;

     d.     Whether Plaintiff and the Class were harmed by Defendants' misrepresentations and omissions;

     e.     Whether Plaintiff and the Class have been damaged, and if so, the proper measure of damages; and

     f.     Whether an injunction is necessary.

56. **Typicality**: Like Plaintiff, many other customers entered into document storage agreements with Iron Mountain without understanding the aforementioned additional fees would be added to their transactions. Plaintiff's claims are typical of the claims of the Class because Plaintiff and each Class member were injured by Defendants' false representations and omissions regarding such additional fees. Plaintiff and the Class have suffered the same or similar injury as a result of Defendants' false, deceptive, and misleading representations. Plaintiff's claims and the claims of the Class emanate from the same legal theory, Plaintiff's claims are typical of the claims of the Class, and, therefore, class treatment is appropriate.

57. **Adequacy of Representation**: Plaintiff is committed to pursuing this action and has retained counsel competent and experienced in prosecuting and resolving consumer class actions. Plaintiff will fairly and adequately represent the interests of the Class and does not have any interests adverse to those of the Class.

58. **The Proposed Class Satisfy the Prerequisites for Injunctive Relief**. Defendants has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Plaintiff remains interested in making purchases with Iron Mountain in the future; there is no way for them to know when or if Defendants will cease deceptively misrepresenting the true cost of document storage services.

59. Specifically, Defendants should be ordered to provide customers with true and accurate total costs for document storage and retrieval *prior* to their decision to store documents with Iron Mountain and not when it is too late.

60. Defendants' ongoing and systematic practices make declaratory relief with respect

to the Class appropriate.

61. **The Proposed Class Satisfy the Prerequisites for Damages**. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200, et seq.)**
**(On Behalf of Plaintiff and the Class)**

62. Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1-61 as if fully set forth herein.

63. Defendants' conduct described herein violates the Unfair Competition Law ("UCL"), codified at California Business and Professions Code section 17200, *et seq*.

64. The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

65. The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

66. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

67. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

68. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

69. Defendants committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly misrepresenting that the presence and nature of its Shred Administrative Fees and its Fuel Surcharges.

70. Defendants' acts and practices offend an established public policy of truthful advertising and fee disclosure in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

71. The harm to Plaintiff and the Class outweighs the utility of Defendants' practices. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misleading and deceptive conduct described herein.

72. Defendants' conduct also constitutes an "unlawful" act under the UCL because it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1750, *et seq.*

73. Defendants' business practices have misled Plaintiff and the proposed Class and, unless enjoined, will continue to mislead them in the future.

74. Plaintiff relied on Defendants' misrepresentations in making her purchase.

75. By falsely marketing their document storage services, Defendants deceived Plaintiff and Class members into making purchases they otherwise would not make.

76. As a direct and proximate result of Defendants' unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendants' fraudulent conduct is ongoing and presents a continuing threat to Plaintiff and Class members that they will be deceived. Plaintiff desires to conduct further business with Defendant but cannot rely on Defendants' representations unless an injunction is issued.

77. As a result of its unfair, fraudulent, and unlawful conduct, Defendants have been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

78. Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

79. Plaintiff has no adequate remedy at law in part because Defendants continues to add Fuel and Shred fees to purchases. Plaintiff therefore seeks an injunction on behalf of the general public to prevent Defendants from continuing to engage in the deceptive and misleading practices described herein.

**SECOND CLAIM FOR RELIEF**
**False and Misleading Advertising**
**(Bus. & Prof. Code §§ 17500, et seq.)**
**(On Behalf of Plaintiff and the Class)**

80. Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1-61 as if fully set forth herein.

81. California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code section 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

82. Defendants' material misrepresentations and omissions alleged herein violate Business and Professions Code section 17500.

83. Defendants knew or should have known that their misrepresentations and omissions were false, deceptive, and misleading.

84. Pursuant to Business and Professions Code sections 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their deceptive practices.

85. Further, Plaintiff requests an order awarding Plaintiff and Class members restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

86. Additionally, Plaintiff and the Class members seek an order requiring Defendant to pay attorneys' fees pursuant to California Civil Code section 1021.5.

### THIRD CLAIM FOR RELIEF
**Breach of Contract**
**(On Behalf of Plaintiff the Class)**

87. Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1-61 as if fully set forth herein.

88. Plaintiff and Class members and Iron Mountain have contracted for the use of Iron Mountain's services, by which Plaintiff and Class members paid for Iron Mountain's document maintenance services, as embodied in its Terms of Use.

89. By knowingly misrepresenting, obscuring and omitting the nature, purpose and extent of its excessive fees, Iron Mountain misled consumers about a material term to induce Plaintiff and Class members to enter into contracts, only revealing the true costs after billing Plaintiff and the Class members.

90. No contract provision contained in the Terms of Use or other representations by Defendants authorizes Iron Mountain to impose the excessive Shred Administrative Fees and Fuel Surcharges and/or the amount of the excessive Shred Administrative Fees and Fuel Surcharges on its customers.

91. Defendants breached the terms of their contract with their customers by misrepresenting and obscuring the additional, undisclosed and excessive fees to Plaintiff and members of the Class.

92. Further, California law implies into every contract a covenant of good faith and fair

dealing. The implied covenant provides that neither party shall do anything which would have the effect of destroying or injuring the right of the other party to receive the benefit of the bargain. See *Khan v. CitiMortgage, Inc.,* 975 F. Supp. 2d 1127, 1142 (E.D. Cal. 2013). A breach of the implied covenant occurs when one party violates the reasonable expectations of the other.

93. Defendants breached the implied covenant of good faith and faith dealing by acting in bad faith and with ill-motive to knowingly deceive consumers about the price, nature and purpose of their excessive extra fees.

94. Defendants engaged in such bad faith conduct including, but not limited to, the following:

   a. Intentionally obscuring disclosures about the prices of its Shred Administrative Fees and Fuel Surcharges;

   b. Misrepresenting the purpose and nature of its Shred Administrative Fees and Fuel Surcharges;

   c. Failing to expressly identify the costs associated with its services; and

   d. Misrepresenting its fees as "pass through" fees despite being retained by Defendants.

95. By taking said actions, Defendants breached their requirement to refrain from using unfair leverage to secure undue economic advantage and their duty to refrain from withholding material information and making misleading representations to consumers.

96. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

97. Plaintiff and members of the Class have sustained damages as a result of Iron Mountain's breach of the contract and breach of the implied covenant of good faith and fair dealing.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of themselves and the Class seek judgment in an amount to be determined at trial, as follows:

(a)  For an order enjoining Defendants from continuing the unlawful practices set forth above;

(b)  For declaratory and injunctive relief as set forth above;

(c)  For an order requiring Defendants to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d)  For compensatory damages according to proof;

(e)  For punitive damages according to proof;

(f)  For reasonable attorneys' fees and costs of suit;

(g)  For pre-judgment interest; and

(h)  Awarding such other and further relief as this Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff hereby demand a jury trial on all claims so triable.

Dated: April 15, 2025

By */s/ Scott Edelsberg*
Scott Edelsberg (SBN 330090)
**EDELSBERG LAW, P.A.**
scott@edelsberglaw.com
1925 Century Park East, Suite 1700
Los Angeles, California 90067
Tel: (305) 975-3320

Jeffrey D. Kaliel
Sophia Goren Gold
**KALIELGOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielgold.com

*Attorneys for Plaintiff and the Proposed Class*

17
AMENDED CLASS ACTION COMPLAINT

18
AMENDED CLASS ACTION COMPLAINT